UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE W. SMITH,<br><br>        Petitioner,<br><br>    v.<br><br>J. SOTO, Warden,<br><br>        Respondent. | Case No. 11-cv-03918-JST (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |

Before the Court is the above-titled petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 by petitioner Wayne W. Smith, challenging the validity of a judgment obtained against him in state court. Respondent filed an answer to the petition.[1] Petitioner has not filed a traverse, and the deadline by which to do so has passed.

## I. PROCEDURAL HISTORY

On July 23, 2008 a San Francisco County jury convicted petitioner of two counts of possession of cocaine for sale (Cal. Health & Saf. Code § 11351.5), one count of possession of heroin (Cal. Health & Saf. Code § 11350), and one count of sale of cocaine (Cal. Health & Saf. Code § 11352). The jury found true that he committed two of the counts while on bail (Cal. Penal Code § 12022.1) and one count while within 1,000 feet of a school (Cal. Health & Saf. Code § 11353.6(b)). (Ex. A at 249-52; Ex. B at 752-54.[2]) Petitioner admitted he had suffered two prior

---

[1] Petitioner initially named R. Trimble, former warden of Pleasant Valley State Prison, as the respondent in this action. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, J. Soto, the current warden of California State Prison – Los Angeles County, where petitioner is currently incarcerated, is hereby SUBSTITUTED as respondent in place of petitioner's prior custodian.

[2] All references herein to exhibits are to the exhibits submitted by respondent in support of the answer.

drug convictions and two prior prison terms. (Ex. A at 258; Ex. B at 758, 795-802.) On October 2, 2008, the trial court sentenced petitioner to 13 years, 4 months in state prison. (Ex. A at 304-06; Ex. B at 815-18.)

Petitioner directly appealed the judgment in the California Court of Appeal. On March 15, 2010, in a reasoned opinion, the California Court of Appeal affirmed the judgment. (Ex. E.) On April 21, 2010, the California Supreme Court summarily denied the petition for review. (Ex. G.) The instant petition was filed on August 10, 2011.

## II.  STATEMENT OF FACTS

The following background facts describing the crime and evidence presented at trial are from the opinion of the California Court of Appeal.[3]:

*A. The July Incident*

On July 20, 2007, San Francisco Police Officer Peter Richardson, accompanied by two other officers, went to a single room occupancy (SRO) hotel on 16th Street near Mission Street, which is a high drug traffic area, to conduct a parole search of [petitioner]. The manager directed them to [petitioner]'s room, and they knocked on the door.

When [petitioner] answered the door, Richardson showed his police badge and identified himself as a police officer. In response, [petitioner] tried to force the door closed, but Richardson, with the help of one of the other officers with him, was able to prevent [petitioner] from doing so. After about 30 seconds, [petitioner] stopped trying to close the door, and the officers entered the room. [Petitioner] ran towards the room's open window, but one of the officers grabbed him and stopped him before he got there.

As the officers entered the room, Richardson saw [petitioner] drop a plastic bag onto the floor, which Richardson picked up because he suspected it contained rock cocaine. Another officer seized two plastic bindles of suspected heroin and a scale from on top of the bed. The suspected drugs were later tested, and found to consist of 6.94 grams of cocaine base and .91 grams of heroin. [Petitioner] was arrested, and a search disclosed that his front pants pocket contained over $500 in bills of varying denominations, ranging from $20 bills to $1 bills. The officers did not find any packaging or cutting materials in the room, and they also found no paraphernalia associated with the use of cocaine or heroin.

---

[3] This summary is presumed correct. Hernandez v. Small, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002); 28 U.S.C. § 2254(e)(1).

A police expert witness opined that [petitioner] possessed the cocaine for sale, based on the facts surrounding this incident, including [petitioner]'s presence in an SRO hotel; his attempt to keep the officers out and then his effort to run to the window; the quantity of cocaine; the amount of cash in small denominations; and the presence in the room of a scale, but no smoking paraphernalia and no clothing or personal hygiene items. The expert also testified that it would be unusual for a person weighing 300 pounds to be a user of crack cocaine.

### *B. The November Incident*

At about 2:50 p.m. on November 9, 2007, San Francisco Police Officer Leonard Poggio was working in plain clothes as a member of a team of officers conducting a controlled drug purchasing operation in the neighborhood of 16th and Mission Streets in San Francisco, where there is a lot of drug traffic. Poggio approached [petitioner] and asked him if he had "solid," which is street slang for crack cocaine. [Petitioner] said that he did, and directed Poggio to walk with him to a nearby donut shop.

Inside the donut shop, Poggio encountered [petitioner]'s codefendant, Christina Holmes, who immediately approached [petitioner] and Poggio. [Petitioner] then handed Holmes an unwrapped off-white rock, which looked to Poggio like cocaine base, and told Holmes to "sell him this 20." Poggio did not see where [petitioner] got the rock from. Holmes then told Poggio to follow her outside to a nearby doorway, where she handed Poggio the same rock and asked him for $20. Poggio examined the rock, confirmed that it appeared to be crack cocaine, and handed Holmes a marked $20 bill.

Poggio then gave a prearranged signal to another officer on his team, and as Holmes returned to the donut shop, Poggio walked across the street. Within a minute, from across the street, Poggio saw Holmes leave the donut shop a second time, cross the street, and sit down on the sidewalk. Poggio watched Holmes continuously from the time she left the donut shop the second time until she was arrested about 15 minutes later. He did not see her try to dispose of or conceal anything during this time. Nonetheless, when she was searched after her arrest, the police found no drugs, paraphernalia, or money in her possession, and the marked $20 bill Poggio had given her was never found. It was not uncommon for this to occur.

After Poggio gave the signal, another officer, Robert Greiner, arrested [petitioner] inside the donut shop. At the police station, Greiner searched [petitioner], and recovered five off-white rocks wrapped in plastic from the area of [petitioner]'s buttocks. The search did not disclose any paraphernalia associated with the use of crack cocaine. The loose rock sold to Poggio and the wrapped ones recovered from [petitioner]'s buttocks area were tested, and proved to be cocaine base weighing a total of about three grams.

…

A police expert witness testified that [petitioner] possessed the cocaine for sale, based on the facts surrounding this incident, including the neighborhood; the initial sale itself; the presence of additional individually wrapped cocaine rocks in [petitioner]'s buttocks area;

3

the absence of smoking paraphernalia; and the use of a donut shop as the location for part of the transaction.

### C. Charges and Pretrial Proceedings

On December 31, 2007, the San Francisco District Attorney filed an information charging [petitioner] (and Holmes, on count three only) as follows: (1) count one: possession for sale of cocaine base on July 20, 2007 (Health & Saf.Code, § 11351.5); (2) count two: possession of heroin on July 20, 2007 (Health & Saf.Code, § 11350, subd. (a)); (3) count three: jointly with Holmes, transportation, sale, and giving away of cocaine on November 9, 2007 (Health & Saf.Code, § 11352, subd. (a)), with allegations that both defendants sold and offered to sell cocaine base (Pen.Code, § 1203.073, subd. (b)(7)) and committed the offenses listed in count three within 1,000 feet of a school where minors were present (Health & Saf.Code, § 11353.6, subd. (b)), and as to [petitioner] only, that he committed the offense while released from custody, on a felony offense, on bail or on his own recognizance (Pen.Code, § 12022.1); (4) count four: possession for sale of cocaine base on November 9, 2007 (Health & Saf.Code, § 11351.5), with the additional allegation, as to [petitioner], of the same bail enhancement as alleged in count three, under Penal Code section 12022.1. The information, as subsequently amended, also alleged that [petitioner] had two prior felony convictions, one on June 3, 2004, and one on December 8, 2005, each of which was alleged under four separate statutes: Health and Safety Code section 11370, subdivisions (a) and (c); Health and Safety Code section 11370.2, subdivisions (a) and (c); Penal Code section 1203.07, subdivision (a)(11); and Penal Code section 667.5, subdivision (b).

Prior to trial, the prosecution moved to introduce evidence that [petitioner] had several prior narcotics convictions. [Petitioner] filed a motion seeking to exclude such evidence under Evidence Code section 352. The trial court ruled that the evidence would be excluded as confusing, but warned that if [petitioner] put on evidence in his defense case to the effect that he had no knowledge that the substances were drugs, or that they were possessed for personal use, the court would permit the prosecution to use the prior crimes evidence to rebut this evidence. As discussed post, after [petitioner] presented his defense case, the trial court permitted the prosecution to present evidence that [petitioner] sold drugs in May 2005.

### D. [Petitioner]'s Statements to Officer Tursi

At a hearing outside the jury's presence under Evidence Code section 402, San Francisco Police Inspector John Tursi testified as follows. On July 23, 2007, while [petitioner] was in custody following his arrest for the July incident, Tursi spoke with [petitioner] in an interview room at the county jail. Tursi was wearing plain clothes, and did not give [petitioner] any Miranda warnings before speaking with him. (*Miranda v. Arizona* (1966) 384 U.S. 436.) Tursi explained to [petitioner] that he was investigating the money seized from [petitioner] at the time of his arrest. [Petitioner] said it was his SSI money. Tursi then asked [petitioner] if he wanted to make a formal recorded statement about the case, and [petitioner] declined, but then said that he did not have any drugs in his possession. Tursi then said, " 'Let's go over the report,' " and [petitioner] did not object, so Tursi read the narrative portion of the police report to [petitioner]. [Petitioner] then admitted that the

4

heroin found in the hotel room was his, though he denied ownership of the cocaine. [Petitioner] testified that at the time, he thought Tursi was his lawyer, and that Tursi "made [petitioner] think he was on my side," though he did not remember what Tursi did or said that gave him that impression.

After the Evidence Code section 402 hearing, the trial court permitted Tursi to testify in front of the jury about his encounter with [petitioner]. Tursi testified that when he first made contact with [petitioner], he introduced himself as a police officer, and showed him his "star," or police badge. Tursi told the jury that [petitioner] declined to make a formal statement; said that he did not have the drugs in his possession, and then, after they "ended up going over the police report," stated that he had some heroin on him when he was arrested on July 20, 2007, but did not have any cocaine.

### E. [Petitioner]'s Expert Witness

One of [petitioner]'s defenses at trial was that he was a drug user, not a drug dealer. To bolster this argument, [petitioner] presented the testimony of Gerald Miller as an expert on cocaine and heroin use. Miller testified that the area around 16th and Mission Streets in San Francisco is a low-income, high drug traffic area, and that rooms in the SRO hotels in that area are often rented for a short time. Miller acknowledged on cross-examination that drugs are bought and sold in SRO hotels, and that the presence of a scale or cash, and the absence of paraphernalia, are relevant factors in determining whether someone possesses a drug for personal use or for sale. Miller opined that addicts may conceal their drugs in their buttocks area when moving from one location to another.

Miller testified that most crack cocaine users use a pipe to smoke it, and that crack cocaine smokers will often keep taking the drug continuously for long periods of time unless they are arrested or become too sick to continue using it. Thus, it is possible for a person to use as much as an ounce of crack in a single day. He also explained that cocaine builds up a tolerance, and that crack users will sometimes use heroin to come down from the crack so that they can feel the cocaine high when they start smoking crack again. Miller also opined that not all crack users are thin, and that fat crack users do exist. He acknowledged, however, that as a generalization, crack users are usually thin.

### F. Rebuttal Evidence of [Petitioner]'s June 2005 Drug Sale

In rebuttal of Miller's testimony, the judge permitted the prosecution to put on a portion of the prior crimes evidence that had previously been excluded, instructing the jury beforehand that the evidence was to be considered only for intent, knowledge, or motive, but not to show propensity. A police officer then testified that on June 15, 2005, he watched [petitioner] walk out the front door of an SRO hotel near Leavenworth and Ellis Streets in San Francisco. There was a group of eight or nine people outside the hotel, who appeared to be waiting for something, and they "literally charged towards" [petitioner] when he emerged. As the members of the group gathered around him, [petitioner] appeared to take something out of his mouth with his fingers, extend his hand to a person in the group who had his or her hand outstretched, and then accept money from that person. This pattern was repeated with at least five different people.

> After counting the money and putting it in his pocket, [petitioner] reached around to his buttocks area and removed an object that looked like a plastic bag, unfolded and untwisted it, took out a small number of white objects, and put them in his mouth. He then closed the bag and returned it to his buttocks area. [Petitioner] was arrested, and a strip search revealed that the plastic bag contained a number of white rocks that proved to consist of 9.26 grams of rock cocaine, including the plastic wrapping. [Petitioner] was not found to have any drug consumption paraphernalia on this occasion.
>
> [Petitioner] put Miller on the stand again in order to rebut this testimony. This time, Miller testified as an expert on possession with intent to sell and sale of cocaine base. He testified that knowing a person had seven grams of crack cocaine and one gram of heroin in an SRO hotel would not in and of itself permit him to determine whether the possession was for sale rather than for personal use. He gave the same opinion with respect to the amount of money a person is carrying in cash. Buyers as well as sellers may be in possession of a scale, because buyers may want to use it to make sure they are not being cheated. People may be selling drugs at one time, and just using them at another time. The absence of a weapon and packaging materials, however, is an indication that the person is not a seller. Finally, Miller opined that storing drugs in one's buttocks area is more consistent with possession for personal use than with possession for sale, because a seller is likely to keep the drugs in a location where they can be accessed more quickly, such as one's mouth, waistband, or pocket.

People v. Smith, No. A123429, 2010 WL 894110, at *1-4 (Cal. Ct. App. March 15, 2010) (footnotes omitted).

## III. DISCUSSION

A.  Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Additionally, habeas relief is warranted only if the

6

constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." Penry v. Johnson, 532 U.S. 782, 795 (2001) (internal citation omitted).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams, 529 U.S. at 405-06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003).

Here, as noted, the California Supreme Court summarily denied petitioner's petition for review. The Court of Appeal, in its opinion on direct review, addressed the two claims petitioner raises in the instant petition. The Court of Appeal thus was the highest court to have reviewed the claims in a reasoned decision, and it is the Court of Appeal's decision that this Court reviews herein. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005).

///

///

///

B. Petitioner's Claims

Petitioner asserts the following grounds for relief: (1) petitioner's Fifth Amendment rights were violated when the trial court admitted statements petitioner made to Officer Tursi; and (2) petitioner's due process rights were violated when the trial court admitted evidence of petitioner's prior crimes.

1. Fifth Amendment Claim

Petitioner claims, under the principles set out in Miranda v. Arizona, his Fifth Amendment guarantee against compelled self-incrimination was violated when the trial court admitted statements petitioner made to Officer Tursi. (Petition at 8.) The Court of Appeal considered and rejected this claim as follows:

> The trial court admitted [petitioner]'s statements to Tursi into evidence on the authority of *People v. Haley* (2004) 34 Cal.4th 283, reasoning that although [petitioner] was in custody at the time (a fact respondent does not contest), Tursi's actions in reading the police report to [petitioner] were not the functional equivalent of an interrogation, and therefore did not trigger the need for *Miranda* warnings. [Petitioner] now argues that the trial court erred in this regard. We need not and do not reach the issue whether Tursi should have given [petitioner] *Miranda* warnings, because our examination of the record convinces us that even if [petitioner]'s statements to Tursi were obtained in violation of *Miranda*, the admission of those statements was harmless beyond a reasonable doubt.
>
> The police officers' testimony regarding [petitioner]'s possession of illegal drugs during the July incident was plausible and uncontroverted. The only defense evidence related to the July incident was Miller's expert testimony on the question whether [petitioner] was a drug user rather than a drug seller. [Petitioner]'s admission to Tursi that he had heroin in his possession during the July incident did not materially affect that defense, as [petitioner] was not charged with selling heroin or possessing it for sale, but only with simple possession. [Petitioner]'s false exculpatory statement to Tursi that he did not have any cocaine also did not damage his defense case. [Petitioner] did not testify, and his credibility therefore was not in issue. To the extent that the false exculpatory statement reflected consciousness of guilt, it added little, if anything, to the officers' testimony regarding [petitioner]'s effort to keep them from entering his hotel room, followed by his flight toward the open window.
>
> In short, given the weight of the evidence against [petitioner], and his failure to proffer any defense evidence negating his possession of the drugs involved in the July incident, we are persuaded that the admission of Tursi's testimony, even if error, was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 36.)

People v. Smith, 2010 WL 894110 at *5.

In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court held that certain warnings

8

must be given before a suspect's statement made during custodial interrogation can be admitted in evidence.  Specifically, Miranda requires that a person subjected to "custodial interrogation" be advised that he has the right to remain silent, that statements made can be used against him, that he has the right to counsel, and that he has the right to have counsel appointed.  "Custodial interrogation" occurs whenever law enforcement officers question a person after taking that person into custody or otherwise significantly deprive a person of freedom of action.  See Miranda, 384 U.S. at 444.  The requirements of Miranda are "clearly established" federal law for purposes of federal habeas corpus review under 28 U.S.C. § 2254(d).  Juan H. v. Allen, 408 F.3d 1262, 1271 (9th Cir. 2005).

The admission of a confession taken in violation of Miranda is subject to harmless error analysis.  Fulminante v. Arizona, 499 U.S. 279, 306-12 (1991).  In other words, habeas relief is appropriate only if the coerced confession had a " 'substantial and injurious effect or influence in determining the jury's verdict.' "  Pope v. Zenon, 69 F.3d 1018, 1025 (9th Cir. 1995)[4] (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

Here, assuming arguendo that the admission of petitioner's statement to Officer Tursi was improper, this Court, for reasons similar to those expressed by the Court of Appeal, agrees any error was harmless.  Specifically, petitioner's defense was that he possessed the drugs for personal use and not for sale.  As the Court of Appeal observed, petitioner's admission to Officer Tursi that the heroin belonged to petitioner did not damage the defense case because petitioner's defense already admitted possession of the heroin.  Further, because petitioner did not testify, any false exculpatory statement he made could not be used to impeach his credibility.  To the extent any false exculpatory statement reflected consciousness of guilt, the jury could already infer consciousness of guilt from petitioner's July 2007 flight from police – a much more damaging piece of evidence.

Finally, even without petitioner's statements to Officer Tursi, the evidence of petitioner's possession of drugs for sale was exceptionally strong.  The officers involved in the July 2007

---

[4] overruled on other grounds by United States v. Orso, 266 F.3d 1030, 1038 (9th Cir. 2001).

arrest gave uncontroverted testimony that: (1) petitioner attempted to keep them from entering his hotel room; (2) petitioner attempted to flee through an open window of the hotel room; (3) they confiscated from the hotel room a large quantity of cocaine as well as two bindles of heroin, a scale, and over $500 in cash; and (4) they found no paraphernalia associated with the use of cocaine or heroin. (Ex. B at 252-59, 318, 346-50.) Regarding the November 2007 incident, Officer Poggio testified that: (1) he approached petitioner and asked to buy cocaine from petitioner; (2) he observed petitioner hand the cocaine to Holmes and instruct Holmes to complete the sale; (3) he gave Holmes money for the cocaine; and (4) he maintained visual surveillance of Holmes until the time of her arrest. (Id. at 135-65, 198-99.) The jury also heard evidence that petitioner sold drugs to a group of at least five different people in June 2005 – evidence introduced to show intent, knowledge, or common plan to sell drugs. (Id. at 556-83.)

In sum, it cannot be said that the admission of petitioner's statements to Office Tursi had a substantial or injurious effect on the verdict. Accordingly, petitioner is not entitled to habeas relief on this claim.

2. Due Process Claim

Petitioner claims his due process rights were violated when the trial court admitted evidence of petitioner's prior crimes. (Petition at 9.) The Court of Appeal considered and rejected this claim as follows:

> As already noted, [petitioner]'s defense case rested primarily on the testimony of Miller, the drug abuse expert, who testified, among other things, that crack users smoke up to an ounce of crack a day, and sometimes use heroin to come down from crack. After this testimony was introduced, and over the objection of [petitioner]'s trial counsel, the trial court permitted the previously excluded evidence of [petitioner]'s crack cocaine sales in June 2005 (discussed *ante*) to be introduced in order to rebut the implication of the expert's testimony that the drugs found in [petitioner]'s possession were for his personal use rather than for sale.
>
> [Petitioner] now contends that this prior crimes evidence should have been excluded under Evidence Code section 352 because it was inflammatory and unduly prejudicial, in that the uncharged crimes from 2005 were much more egregious than the charged crimes. As [petitioner] acknowledges, our standard of review on this issue is abuse of discretion. (See *People v. Lenart* (2004) 32 Cal.4th 1107, 1123; *People v. Cudjo* (1993) 6 Cal.4th 585, 609.) An exercise of trial court discretion "will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. [Citation.]" (*People v. Rodriguez* (1999) 20

Cal.4th 1, 9-10.)

[Petitioner] characterizes the evidence regarding his June 2005 crimes as portraying him as a "major drug dealer" and "kingpin" who was "preying on the desperation of street crack addicts." He also notes that on the occasion of the prior crime, he was found with a larger quantity of cocaine – nine or ten grams – than in this case, when he had slightly less than seven grams (plus just under a gram of heroin) in the July 2007 incident, and a total of three grams in the November 2007 incident.

The amounts of crack cocaine found in [petitioner]'s possession in July and November 2007, however, were not different by orders of magnitude from the amount he possessed in June 2005. Moreover, the pattern of behavior was very similar – in both June 2005 and November 2007, [petitioner] sold cocaine on the street, in a neighborhood known for having a great many drug users and street dealers, and in both June 2005 and July 2007, he possessed drugs in the vicinity of an SRO hotel.

Most significantly, the evidence of [petitioner]'s cocaine sales in June 2005, just like the facts of the July and November 2007 incidents, marked [petitioner] as a low-level street dealer, not a "kingpin." (See, e.g., *People v. Superior Court (Clements)* (1988) 200 Cal.App.3d 491, 500 [characterizing drug "kingpin" as someone who enjoys " 'certain knowledge that he may have at his beck and call lawyers whose fees run into hundreds of thousands of dollars' " and who has sufficient " 'undeserved economic power ... to command high-priced legal talent' "].) Accordingly, we are not persuaded that the trial court abused its discretion in determining that the probative value of this evidence, in establishing that [petitioner] possessed cocaine with the intent to sell, outweighed its prejudicial impact.

People v. Smith, 2010 WL 894110 at *5-6.

Petitioner argues that the June 2005 "prior crime evidence . . . painted [him] as a kingpin type drugdealer." (Petition at 9.) To the extent petitioner is claiming the evidence was impermissible character or propensity evidence, the claim fails because no remediable constitutional violation occurred. A federal habeas petitioner's due process right concerning the admission of propensity evidence is not clearly established for purposes of review under AEDPA, the Supreme Court having reserved this as an open question. Alberni v. McDaniel, 458 F.3d 860, 866-67 (2006).

Petitioner's related contention that the prejudicial effect of the conviction evidence outweighed its probative value also fails. First, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009). Second, the admission of evidence is not subject to federal habeas review unless a

11

specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999); Colley v. Sumner, 784 F.2d 984, 990 (9th Cir. 1986). Due process is violated only if there are "no permissible inferences the jury may draw from the evidence." Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).

Here, petitioner has not shown that a specific constitutional guarantee was violated or that he was denied a fair trial. Under California Evidence Code § 1101, petitioner's prior conviction fell within the scope of proper rebuttal evidence. California Evidence Code section 1101(a) prohibits the admission of "evidence of a person's character or a trait of his or her character . . . when offered to prove his or her conduct on a specified occasion." Subsection (b) provides, however, "[n]othing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act." Because the jury could have drawn the "permissible inference" that petitioner possessed drugs with intent, knowledge, or plan to sell in both 2005 and 2007, his constitutional rights were not violated. See Jammal, 926 F.2d at 920.

Finally, any prejudicial effect was ameliorated by the juror instructions to regard such evidence for the limited purpose of showing intent, knowledge, or common scheme or plan and specifically not to regard the evidence to show propensity. (Ex. B at 552-53, 708-09.) This Court must presume that the jury followed its instructions and used the evidence appropriately. Richardson v. Marsh, 481 U.S. 200, 206 (1987).

Accordingly, petitioner is not entitled to habeas relief on this claim.

C.  Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. See Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the

12

certificate must indicate which issues satisfy this standard. Id. § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

## IV. CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED.

The Clerk shall enter judgment in favor of respondent and close the file.

Additionally, the Clerk is directed to substitute J. Soto on the docket as the respondent in this action.

**IT IS SO ORDERED.**

Dated: October 29, 2013

_____
JON S. TIGAR
United States District Judge